# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| BRIAN LOREN STOWE, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. C17-2002-LTS <br><br> **ORDER ON REPORT AND RECOMMENDATION** |

_____

## *I.    INTRODUCTION*

This case is before me on a Report and Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, United States Magistrate Judge.  Doc. No. 17.  Judge Mahoney recommends that I reverse the decision of the Commissioner of Social Security and remand this case for reconsideration pursuant to 42 U.S.C. § 405(g).  Neither party has objected to the R&R.  The deadline for such objections has expired.

## *II.    APPLICABLE STANDARDS*

### A.    *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion."  *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).  The Eighth Circuit explains the standard as "something less than

the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because

substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

*B.     Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*,

3

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Stowe alleged disability due to post-traumatic stress disorder (PTSD) and bradycardia. AR 40. Following a September 28, 2015, hearing, the ALJ found that Stowe suffered from severe impairments of bradycardia, "anxiety disorder/post-traumatic stress disorder, major depressive disorder, and history of polysubstance abuse disorder in remission." AR 20. However, the ALJ determined Stowe retained the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: occasionally climbing ramps and stairs but never climbing ladders, ropes, and scaffolds; never balancing; no exposure to hazardous materials or unprotected heights; able to understand, remember, and carry out simple instructions and perform simple, routine, repetitive work tasks in environments with short-lived, superficial interaction with the general public, coworkers, and supervisors.

AR 22. In evaluating Stowe's RFC, the ALJ assigned little weight to an RFC opinion from Stowe's treating psychiatrist, Ann Rathe, M.D., and gave great weight to the RFC opinions of the state agency consultants. AR 25-26. The vocational expert testified that a hypothetical person with Stowe's RFC could work as a kitchen helper or order picker. AR 71. Therefore, the ALJ determined that Stowe was not disabled. AR 27. Stowe

4

sought review in this court, arguing that the ALJ erred in assigning little weight to his treating physician's opinion but great weight to the state agency consultant opinions.

Judge Mahoney began by finding that the ALJ's evaluation of Dr. Rathe's opinion was not supported by substantial evidence. First, Judge Mahoney determined that the ALJ erred in determining that Dr. Rathe's RFC opinion was inconsistent with the record as a whole:

> Dr. Rathe's September 2015 treatment note supports that Stowe had improved at that time: he reported spending time with his girlfriend and friends from AA, baking a cake, making art, and sleeping and eating better; he denied suicidal ideations; and Dr. Rathe found that he was "coping fairly well with the stress of impending incarceration" and that he had a normal objective examination (aside from an "appropriate but sad . . . [and] not tearful" affect and "worried" mood). AR 414-15. But an ALJ cannot discount a treating physician's RFC opinion based on a finding of inconsistency with one treatment note; rather, opinions from treating sources may be "given less weight if they are inconsistent with *the record as a whole*." *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004) (emphasis added); *see also, e.g., Pates-Fire v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009) (holding that the ALJ could not discount a treating physician's RFC opinion based on an alleged inconsistency with one Global Assessment of Functioning (GAF) score of 58; rather, the ALJ had to consider the claimant's "total GAF score history," which demonstrated only four out of twenty-one GAF scores above 50). This is particularly true here, where the treatment note relied on by the ALJ is from "nine months after the date last insured," and as such, the ALJ found this "record[] do[es] not provide additional insight into the relevant period." AR 24.
>
> Because this statement finding the September 2015 records essentially irrelevant is the only analysis the ALJ provided of those records, it is unclear what the ALJ found inconsistent between the substance-abuse evaluation and Dr. Rathe's RFC opinion. Accordingly, substantial evidence does not support a finding of inconsistency. The substance-abuse evaluation does not evaluate Stowe's functional limitations, although it reflects Stowe reported suffering nightmares, PTSD symptoms, and anxiety and that for a time, he could not leave his house or sleep, and he "would

5

wake up with bloody hands due to hitting walls in his sleep" during nightmares. AR 408-12. The evaluation concludes that Stowe is "[c]urrently experiencing symptoms of PTSD." AR 410. The evaluation also notes that Stowe's "substance use appears to be tied to his mental health problems and PTSD" and recommends substance-abuse treatment, psychiatric treatment, and counseling. AR 411-12. From my review, nothing in the substance-abuse evaluation is inconsistent with Dr. Rathe's RFC opinion.

Substantial evidence does not support a finding that Dr. Rathe's RFC opinion was inconsistent with the record when viewed as a whole. From January to May 2014, Dr. Rathe consistently observed Stowe's affect to be tearful or near tears (unlike the September 2015 treatment record relied on by the ALJ, in which Dr. Rathe explicitly noted Stowe was not tearful). *See* AR 260, 392, 394 (tearful affect noted in January, February, and early March 2014); AR 396, 398 (affect was frequently near tears in mid-March and April 2014); AR 400 (affect occasionally near tears in May 2014 and "a little brighter"); *see also* AR 256 (Therapist Schneiderman observed in early January 2014 depressed mood, guarded affect, and anxiety); *but see* AR 251, 254 (Therapist Schneiderman observed a mostly normal mental status examination except for preoccupied thought process in late January and early February 2014). Although Dr. Rathe's treatment records reflect Stowe sometimes denied suicidal thoughts (as he did in September 2015) (AR 251, 394, 398, 401), Stowe reported driving to a bridge and contemplating jumping after his breakup in August 2013, and he stated that he wished he would not wake up (passive suicidal ideation) in late February and mid-March 2014 (Dr. Rathe believed he was having more active suicidal thoughts in late February, but Stowe refused to give details due to fear of being hospitalized) (AR 255, 258, 392, 397). Treatment records throughout the first half of 2014 reflect Stowe had trouble sleeping due to PTSD nightmares. AR 253, 256, 258 (reported frequent nightmares in January 2014); AR 251, 392, 398 (reported sleeping 4-5 hours in February to April 2014, but still suffering nightmares); AR 400 (reported same amount of sleep in May 2014, after prazosin was discontinued due to side effects, but feeling more tired during the day). From January to May 2014, Stowe sometimes reported being able to help with chores, read, write, play guitar, and fill out applications, but he also sometimes lacked motivation and energy to do those things. AR 255, 258, 392, 394, 396-98. And although (as the ALJ noted) Dr. Rathe's treatment notes reflect Stowe

6

was able to play music with friends from AA, ride his bike, and care for his mother following her knee surgery, those same treatment notes (from April and May 2014) also show Stowe had to leave due to anxiety and PTSD symptoms when he attempted to go to crowded public places: specifically, the community gym with his child, his child's youth soccer game, and shopping at Walmart separately from his father. AR 24, 398, 400. Other evidence in the record also demonstrates Stowe frequently had to leave places due to anxiety with being around people: he testified that he was fired from four different jobs in 2013 for leaving during a shift due to anxiety; he testified that he attempted to attend a concert with his father but could not enter the arena due to anxiety; and a March 2014 treatment note reflects Stowe attempted to attend a different AA meeting than usual but left due to anxiety when he heard laughter through the door. AR 48-52, 62, 396; *but see* AR 64-65 (Stowe testified he sometimes goes to church and quiet parks). When viewed as a whole, Dr. Rathe's treatment records, as well as other evidence in the record, are consistent with her findings of marked and extreme workplace limitations involving Stowe's ability to be around people (AR 402-07). *See Reed v. Barnhart*, 399 F.3d 917, 921-22 (8th Cir. 2005) (treating physician's RFC opinion finding marked limitations was consistent with treatment notes reflecting claimant "'struggles taking care of herself because it seems unnatural [to her],' 'still struggles with sleep' despite medication, was 'afraid to see me . . . because she was not able to do the homework I asked her to do,' 'has crowd intolerance,' and 'is tearful'" (alteration in original)).

Doc. No. 17 at 8-11 (footnotes omitted).

Judge Mahoney went on to analyze the "other reasons" provided by the ALJ for discounting Dr. Rathe's opinion, determining that they "fare no better." *Id.* at 11. First, Judge Mahoney found that the ALJ erred in discounting Dr. Rathe's opinion because it was issued after a seven-month gap in treatment, explaining that the relevant inquiry is whether the opinion related to the claimant's condition during the relevant period. *Id.* at 11-12. Judge Mahoney then found that the ALJ improperly assessed Dr. Rathe's history of treating Stowe, thereby undervaluing Dr. Rathe's status as a treating physician:

> The ALJ found because Dr. Rathe acknowledged Stowe "frequently no-showed or canceled appointments" and "[s]ometimes (normally when

7

using) . . . drop[ped] out of sight altogether," Dr. Rathe's treatment of
Stowe "was extremely limited." AR 25, 403. The ALJ may of course
consider the frequency of treatment when determining the weight to assign
medical opinions, but here, no matter how limited Dr. Rathe's treatment of
Stowe was, she still saw him more times than the state agency consultants
(who never treated Stowe). Treatment records reflect that Dr. Rathe saw
Stowe six times between January and May 2014 and at least twice in
September 2015, and not all of Dr. Rathe's treatment notes are in the
record: her RFC opinion notes she saw Stowe about every two months
from January 2014 to February 2015, with no contact from February to
September 2015. AR 258-60, 392-402, 414-15. Dr. Rathe's treatment of
Stowe puts her "squarely within the definition of treating source" as
Stowe's psychiatrist. *DiMasse v. Barnhart*, 88 F. App'x 956, 957 (8th Cir.
2004) (per curiam) (ALJ erred in determining psychiatrist was not treating
source when she saw claimant "twice in 1996, twice in 1997, once in 1998,
and seven times in 1999").

Doc. No. 17 at 13. Finally, Judge Mahoney noted that the ALJ improperly discounted Dr. Rathe's opinion based on Stowe's treatment noncompliance, without addressing whether Stowe failed to follow his treatment for "good reason:"

> Finally, to the extent the ALJ discounted Dr. Rathe's RFC opinion
> based on Stowe's noncompliance with treatment, the ALJ could do so only
> if Stowe failed to follow "prescribed treatment . . . without good reason."
> *Brown v. Barnhart*, 390 F.3d 535, 540-41 (8th Cir. 2004) (holding that the
> ALJ could discount the treating physician's RFC opinion based on the
> claimant's noncompliance because the record demonstrated no good reason
> for noncompliance existed); *see also Bernard v. Colvin* 774 F.3d 482, 487-
> 88 (8th Cir. 2014) (same); *Wildman v. Astrue*, 596 F.3d 959, 964-66 (8th
> Cir. 2010) (same); *Brace v. Astrue*, 578 F.3d 882, 885-86 (8th Cir. 2009)
> (same; recognizing that "[a] claimant's noncompliance may be justifiable
> under certain conditions"). This rule stems from 20 C.F.R. § 404.1530(b)
> (and its analogue for supplemental security income claims, 20 C.F.R. §
> 416.930(b)), which provides that the ALJ will not find a claimant disabled
> "if [the claimant] do[es] not follow the prescribed treatment without a good
> reason." *See Bernard*, 774 F.3d at 488; *Brace*, 578 F.3d at 885; *Brown*,
> 390 F.3d at 540. The Eighth Circuit has recognized that "a lack of
> sufficient financial resources to follow prescribed treatment to remedy a
> disabling impairment may be . . . an independent basis for finding justifiable

8

cause for noncompliance." *Brown*, 390 F.3d at 540 (quoting *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984)). A claimant may have a good reason for failing to take prescribed medications if they cause unmanageable side effects. *See id.* at 540-41; *see also Brace*, 578 F.3d at 886. When "noncompliance with . . . medication [i]s a medically-determinable symptom of [the claimant's] mental illness," the claimant also has a good reason for failing to follow prescribed treatment. *Pate-Fires v. Astrue*, 564 F.3d 935, 945-46 (8th Cir. 2009) (addressing whether justifiable cause existed for purposes of Social Security Ruling (SSR) 82-59); *see also Wildman*, 596 F.3d at 965-66 (when evaluating whether the ALJ properly discounted a medical opinion based on the claimant's noncompliance, addressing whether claimant's mental impairments caused noncompliance such that good cause existed but ultimately determining they did not).

A treatment note from Dr. Rathe in March 2014 reflects that Stowe's failure to take medications is "a symptom of his demoralization and depression [rather] than . . . willful resistance," and "his perception that he is a burden or is not treatable" (a symptom of his depression) "may be preventing him from advocating for himself and taking care of himself." AR 394-95. Stowe told Therapist Schneiderman he did not want to return to Therapist Dickinson for EMDR treatment because it would trigger memories of his ex-girlfriend, who attended therapy at the same place; he later told Dr. Rathe that he left messages for Therapist Dickinson, but Therapist Dickinson never returned his call (and Stowe testified that Therapist Dickinson "shut the door on him" due to unpaid bills and lack of insurance). AR 41, 255, 395-96. He told Dr. Rathe that he had not called to increase his prazosin prescription as instructed because it caused headaches at first; later, he said that he was hesitant to increase his prazosin prescription due to fear of being dependent on it and a dislike of "having to take medications to feel good psychologically" (his prazosin prescription was eventually discontinued due to its adverse effect on his blood pressure). AR 371, 392, 396. Dr. Rathe's treatment notes from 2014 reflect that Stowe was anxious about the cost of his sessions with Dr. Rathe and that he procrastinated calling the person she suggested could help him obtain health insurance; that he did not return to Therapist Schneiderman "due to anxiety" about the bill; that he reported having difficulties filling out health insurance applications due to his mental impairments; and that he lacked motivation (due to his depression) and missed the deadline to sign up for

9

health insurance through the exchanges. AR 394, 396, 398; *see also* AR 42-43, 64 (testimony regarding lack of health insurance and inability to afford treatment), 414 (September 2015 treatment note reflecting Stowe could not afford to take the full dosage of his prescription). In her RFC opinion, Dr. Rathe noted:

> [Stowe's] treatment has been hindered by his lack of personal commitment to recovery efforts. He has frequently no-showed or [canceled] app[ointments and] declined to respond to our efforts to reach [Stowe]/reschedule [Stowe]. Sometimes (normally when using) he drops out of sight altogether. . . . Prognosis: [p]oor, unless he decides to fully participate in a chemical dependency [and] mental health program. . . . I think [Stowe's] chemical dependency issues are just as much a part of his illness as his MDD/PBD [symptoms] are. However, he has had long stretches of sobriety with persistent disabling anxiety and depression so . . . they are separate issues.

AR 403, 407.

The ALJ recognized Stowe's potential financial difficulties in obtaining treatment, stating "[e]ven though [Stowe] claimed to have only intermittent insurance, the record does not show such acute symptoms when he did have coverage, and there is no evidence of ongoing problems or emergency room visits for mental symptomology." AR 24. The ALJ did not reject Stowe's claim of intermittent insurance. Neither did the ALJ find that Stowe could have obtained treatment through other means. Moreover, the ALJ completely failed to address the possibility that Stowe's noncompliance was due to his mental impairments. Accordingly, Stowe's noncompliance with treatment cannot serve as a "good reason" for discounting Dr. Rathe's RFC opinion.

Doc. No. 17 at 13-17.

Turning to the issue of whether the ALJ properly weighted the nonexamining state agency consultants' RFC opinions, Judge Mahoney found that the ALJ "did not give a good reason for giving more weight to the nonexamining state agency consultants' RFC opinions than to Stowe's treating psychiatrist," particularly given that one of the state

10

agency consultants erred by considering only four treatment notes from the relevant time period. *Id.* at 8, 17. Finally, Judge Mahoney considered whether to remand for an award of benefits outright:

> I have doubts that on this record, substantial evidence could support a finding that Stowe was not disabled if his noncompliance and substance abuse are not considered. Nevertheless, I believe that remand to the Social Security Administration is appropriate, as a finding of disability may be precluded based on 20 C.F.R. § 404.1530 and SSR 82-59. The Social Security Administration should determine in the first instance whether those provisions apply and whether Stowe's noncompliance with treatment was justified. When determining whether noncompliance was justified, the ALJ should point to specific instances of noncompliance (for example, the precise appointments and medications missed). Stowe's unjustified noncompliance could provide a "good reason" for discounting Dr. Rathe's RFC opinion, but the ALJ may also provide additional reasons on remand for affording more weight to the state agency consultants' opinions than to Dr. Rathe's opinion.

*Id.* at 17-18 (footnote omitted).

## IV. DISCUSSION

Because the parties did not object to the R&R, I have reviewed it for clear error. I find no error—clear or otherwise—in Judge Mahoney's recommendation and therefore will adopt the R&R in its entirety. Judge Mahoney applied the appropriate legal standards for evaluating the treating source opinion and the ALJ's RFC. She correctly found that the ALJ failed to provide good reasons for discounting Dr. Rathe's opinion and that the RFC was not based on substantial evidence. I further agree with Judge Mahoney that a remand for further proceedings, rather than for an immediate award of benefits, is appropriate in this case.

## V. CONCLUSION

For the reasons set forth herein:

1. I **accept** Judge Mahoney's R&R (Doc. No. 17) without modification. *See* 28 U.S.C. § 636(b)(1).

2. The Commissioner's determination that Brian L. Stowe was not disabled is **reversed** and this case is **remanded** to the Commissioner for further proceedings consistent with this order.

3. Judgment shall enter in favor of the plaintiff and against the defendant.

**IT IS SO ORDERED.**

**DATED** this 8th day of March, 2018.

_____
Leonard T. Strand, Chief Judge